IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Terry Pressley, ) | |
| ) | Civil Action No. 6:06-2820-GRA-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Al Cannon, Sheriff; Mitch Lucas, ) | |
| Chief; Sergeant Wright; Officer ) | |
| Phillips; and Corporal Goodyear, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on the defendants' motion for summary judgment. The plaintiff, a pretrial detainee proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

The defendants filed a motion for summary judgment on May 10, 2007. By order filed May 11, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure. On July 19, 2007, the plaintiff filed his response to the motion.

**FACTS PRESENTED**

The plaintiff was arrested for a parole violation incident to a bank robbery and was housed at the Charleston County Detention Center ("CCDC") from September 29, 2006, until February 13, 2007. In his complaint, the plaintiff complains of a myriad of

problems resulting from the conditions of his confinement, including: overflow from commodes and showers; sewage spillage onto his feet; overcrowded cells; eating from the floor because tables were used as beds by other inmates; sleeping on a concrete floor; an officer who threw a grievance form away; insufficient telephone access; and stress-related anxiety due to insufficient sprinkler systems. The plaintiff also complains he experienced pain in his right shoulder from sleeping on a concrete floor and a "persistent dry cough."

The plaintiff states in his complaint that immediately upon his arrival at the CCDC he began to complain, and he filled out a "request form," which he alleges was thrown away by defendant Wright. The plaintiff stated he did not receive a final answer regarding his grievance and in fact received no response from the defendants (*see* comp. ¶ II. C.(1) and II E. 1 and 2). The day the plaintiff was booked into the CCDC (September 29, 2006) is the day he alleges he attempted to file a grievance (*see* comp. ¶ II. C. (2)). At that time, the plaintiff was in a holding area, and he had not yet been assigned to a specific location. Defendant Walter Wright, a Senior Sergeant with the CCDC, states in his affidavit that he does not recall the plaintiff asking for a complaint form, and even if he had, grievance forms are not available to inmates while they are in a holding cell, as inmates are usually in a holding cell less than 24 hours. Defendant Wright does acknowledge that the plaintiff began complaining as soon as he got to the CCDC, and in an effort to accommodate the plaintiff, defendant Wright moved him two or three times during the booking period. Wright flatly denies taking a complaint form from inmate and throwing it away (Wright aff. ¶¶ 2-7). Additionally, in his affidavit, Chief Mitch Lucas, Jail Administrator of the CCDC, confirms that the CCDC has a grievance procedure and the plaintiff failed to follow it in reference to the conditions of confinement claim (Lucas aff. ¶¶ 5-8). The plaintiff's medical file at the CCDC shows that he submitted a health service request on October 15, 2006, for an extra blanket. He was seen in the clinic on November 1, 2006, by a doctor who noted that the plaintiff's blood pressure and diabetes

were under control. The plaintiff submitted another health request form on January 10, 2007, in which he indicated that he had a bad cough. The attached records show that he had a mild fever and congestion. The plaintiff was given Tylenol and fluids. An identical health services request was submitted on January 12, 2007, which was indicated as resolved. The plaintiff was seen by the doctor on January 29, 2007, for a blood pressure and diabetes check. No problems were noted (Wright aff. ¶ 10; def. m.s.j., ex. 4).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The defendants first argue that the plaintiff has failed to exhaust his available administrative remedies. Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the Supreme Court has observed:

> Beyond doubt, Congress enacted §1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an

>administrative record that clarifies the contours of the controversy.

*Porter v. Nussle,* 534 U.S. 516, 524-25 (2002) (citations and quotations omitted).

The plaintiff claims that the day he was booked into the CCDC (September 29, 2006) is the day he filled out a "complaint" and gave it to defendant Wright. He claims defendant Wright threw it into the trash can (*see* comp. ¶ II). He claims he received no response from the defendants. At the time the plaintiff claims he filled out a grievance form, he was still in a holding area and had not yet been assigned to a specific location. Defendant Wright testified that he does not recall the plaintiff asking for a complaint form, and even if he had, grievance forms are not available to inmates while they are in a holding cell, as inmates are usually in a holding cell less than 24 hours. He denies taking a form from the plaintiff and throwing it away. The plaintiff does not allege that he filed a grievance with regard to the conditions that he allegedly encountered in Northside-A cellblock after he was moved from the holding cell, including overflow from commodes and showers; sewage spillage onto his feet; overcrowded cells; eating from the floor because tables were used as beds by other inmates; sleeping on a concrete floor; insufficient telephone access; and stress related anxiety due to insufficient sprinkler systems. Therefore, the only claim that has arguably been exhausted is the claim with regard to overcrowding in the holding cell and having to sleep on the floor. Accordingly, the defendants' summary judgment motion should be granted as to the other conditions of confinement allegations.

Even if the plaintiff could show that he has exhausted his administrative remedies on all his allegations, his claims fail on the merits. Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). Where a pretrial detainee complains of prison conditions, the proper inquiry is

whether the conditions of his confinement amount to punishment before a proper adjudication of guilt.  *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992).  Not every hardship suffered during pretrial detention amounts to "punishment" in the constitutional sense.  *Id.* (citing *Bell,* 441 U.S. at 53).  To succeed on a claim for cruel and unusual punishment, a prisoner must prove:  (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  "'[I]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'"  *Moore v. Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)).

    The plaintiff has failed to show either element of a conditions of confinement claim.  Conclusory allegations, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989).  Based upon the foregoing, the claim fails.

    Next, the defendants argue that the record fails to reflect personal involvement of defendants Sheriff Al Cannon and Jail Administrator Mitch Lucas and, further, the record does not show the elements necessary to establish a claim under a supervisory theory. This court agrees. The plaintiff has failed to allege that these individual defendants personally acted or failed to act in violation of his constitutional rights.  The doctrine of *respondeat superior* generally is inapplicable to §1983 suits.  *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977). The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate:  (1) the supervisor had actual or

6

constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994). The plaintiff has failed to show that the subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury. Further, there is no evidence that these defendants were indifferent to or authorized any such conduct.

The defendants also argue that they are entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there

7

"because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendants violated any of his constitutional rights. Therefore, the defendants are entitled to qualified immunity on these claims.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment be granted. Any remaining pending motions will be held in abeyance pending the district court's disposition of the motion for summary judgment. Should the district court adopt this court's recommendation, these motions will be rendered moot.

WILLIAM M. CATOE
UNITED STATES MAGISTRATE JUDGE

September 11, 2007

Greenville, South Carolina

8